# Third District Court of Appeal

## State of Florida

Opinion filed December 22, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-681
Lower Tribunal No. 15-25360
_____


**Jose R. Castillo,**
Appellant,

vs.

**Solimar Rodriguez,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Marcia Del Rey, Judge.

Nancy A. Hass, P.A., and Nancy A. Hass (Fort Lauderdale), for appellant.

Mandel Law Group, P.A., and Roberta G. Mandel, for appellee.


Before FERNANDEZ, C.J., and EMAS and BOKOR, JJ.

BOKOR, J.

Jose Castillo ("Castillo") appeals the trial court's order granting partial final summary judgment in favor of Solimar Rodriguez ("Rodriguez"), which disestablished paternity for Castillo and established paternity for the purported biological father, Andy Eugeno Alfonso Coira ("Coira"). We have jurisdiction.[1] A review of the record and the relevant Florida Statutes reveal that the trial court erred both in disestablishing paternity for Castillo, who was adjudicated the natural father of the minor child, and in establishing paternity for Coira.

## I. BACKGROUND

On January 20, 2014, Rodriguez gave birth to baby LC. On October 9, 2015, Castillo, the on-again, off-again partner of Rodriguez, filed a petition to determine paternity based on his belief that LC resulted from Castillo and Rodriguez's shared intimacy on or about April 2014. Rodriguez and Castillo were never married but Castillo was listed as father on LC's birth certificate. On February 15, 2016, Castillo and Rodriguez filed a stipulation of the parties on adjudication of paternity. The stipulation, adjudicating Castillo LC's

---

[1] We have jurisdiction over a final judgment determining paternity pursuant to Florida Rule of Appellate Procedure 9.030(b)(1)(A). See also Salgado v. Suyapa-Jimenez, 254 So. 3d 1053, 1055 (Fla. 3d DCA 2018) (explaining that the order on appeal, determining paternity, was a final appealable order because it resolved all pending issues in the underlying petition).

2

natural father, was ratified by the trial court in an order dated February 22, 2016.

On March 10, 2016, Rodriguez filed an "amended, verified counter-petition for the determination of paternity, parental responsibility, parenting plan, time sharing schedule and for relocation."[2] Rodriguez alleged that she had recently married her long-term boyfriend, who is not a party to the underlying case or any related action, and sought to relocate with him and LC to Colorado, where he was stationed as a member of the United States Army. While the trial court ultimately denied Rodriguez's amended counter-petition, Rodriguez and Castillo entered into an agreed time-sharing schedule on July 13, 2016, ratified by the trial court on July 20, 2016, which provided Castillo the majority of the time-sharing but permitted Rodriguez to keep LC in Colorado during the summer months.

Less than a year later, on March 3, 2017, Rodriguez filed a petition to disestablish Castillo's paternity of LC.[3] Therein, Rodriguez alleged, *inter*

---

[2] Although entitled a "counter-petition" regarding paternity, there was no argument regarding the already-stipulated paternity. Instead, Rodriguez primarily sought the trial court's permission to relocate to Colorado with LC and her new husband and to modify time sharing with Castillo, accordingly.

[3] The record reveals other, subsequently-filed legal proceedings between and among Coira, Rodriguez, and sometimes Castillo. Eventually, these subsequently-filed cases were dismissed or consolidated with the instant, earlier-filed related case. However, the improper filing of cases without

3

*alia*, that she recalled having been intimate with Coira around the time of LC's conception but did not think at the time of LC's birth that Coira could be the biological father due to his purported fertility issues. Despite Rodriguez's belief that Coira was incapable of having children, she nevertheless contacted Coira and asked him to submit to a DNA test. Coira agreed, and the DNA test determined that Coira's probability of paternity is 99.99998%.[4]

Rodriguez subsequently withdrew her petition to disestablish Castillo's paternity, and on June 19, 2018, Rodriguez and Coira filed a joint amended petition. The three-count, joint amended petition sought disestablishment of paternity for Castillo pursuant to sections 742.10(4) and 742.18, Florida Statutes, and establishment of paternity for Coira as the biological father of LC.

On October 24, 2019, Rodriguez filed a motion for partial summary judgment relying on sections 742.12(4), 742.18(11) and 742.10(4), Florida Statutes, as the bases for disestablishment of paternity for Castillo. Specifically, Rodriguez argued that summary judgment could be entered based on a material mistake of fact—specifically, that the DNA results

---

including indispensable parties by Rodriguez and Coira likely contributed to the convoluted record in this case.

[4] Said DNA results were filed on October 29, 2018. The DNA results were adopted by the trial court on June 18, 2019.

4

indicate that Coira is LC's biological father.  Before the trial court heard Rodriguez and Coira's joint motion on March 12, 2020, Coira filed a motion for leave to amend to remove the count two of the amended petition in which Coira sought to disestablish Castillo's paternity.  Therefore, the trial court heard argument only as to counts one and three of the amended petition: Rodriguez's claim to disestablish Castillo's paternity (count one) and her claim to establish Coira's paternity (count three).  On March 20, 2020, relying primarily on the results of the DNA test and its interpretation of the relevant statutes, the trial court entered its order granting partial final summary judgment in Rodriguez's favor as to counts one and three of the amended petition.  This appeal followed.

## II.    STANDARD OF REVIEW

"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law.  Thus, our standard of review is de novo."  Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000) (citation omitted).

## III.    DISCUSSION

Rodriguez avers that sections 742.18(11), 742.12(4), and 742.10, Florida Statutes, support her petition to disestablish paternity.  However, nothing in

the cited Florida Statutes permit the trial court to disestablish paternity based on the facts of this case.

Section 742.18, Florida Statutes, governs disestablishment of paternity. This section "establishes circumstances under which <u>a male</u> may disestablish paternity or terminate a child support obligation <u>when the male is not the biological father of the child</u>." § 742.18(1), Fla. Stat. (emphasis added). Rodriguez, however, relies on a caveat in subsection (11) which provides that: "[n]othing in this section precludes an individual from seeking relief from a final judgment, decree, order, or proceeding pursuant to Rule 1.540, Florida Rules of Civil Procedure, or from challenging a paternity determination pursuant to s. 742.10(4)." § 742.18(11), Fla. Stat. As explained below, Rodriguez's—and the trial court's—reliance on section 742.10(4), Florida Statutes, is misplaced.

Importantly, section 742.10(4), Florida Statutes, provides Rodriguez with no basis for relief. Specifically, this subsection doesn't permit relief based on the facts of the case. Instead, subsection (4) provides a mechanism to challenge "a signed voluntary acknowledgement of paternity . . . on the basis of fraud, duress, or material mistake of fact" outside the 60-day window referred to in subsection (1). § 742.10(4), Fla. Stat. Here, we have an adjudication of paternity by a circuit court of competent jurisdiction, not a

6

voluntary acknowledgment of paternity as described in section 742.10(1). The trial court adjudicated Castillo as LC's natural father on February 22, 2016. Section 742.10(4), Florida Statutes, contemplates a challenge only in the absence of an adjudicatory proceeding.[5]

Furthermore, in Department of Health and Rehabilitative Services v. Privette, the Supreme Court of Florida explained that:

> [I]f a test shows that [a man] is the child's biological father, this fact without more does not constitute grounds to grant a paternity petition. . . . It is conceivable that a man who has established a loving, caring relationship of some years' duration with his legal child later will prove not to be the biological father. Where this is so, it seldom will be in the children's best interests to wrench them away from their legal fathers and judicially declare that they now

---

[5] We note that Rodriguez sought relief under section 742.10(4) before the trial court. Rodriguez now asserts on appeal that a material mistake of fact—Coira's purported infertility and the resultant belief that Castillo was LC's biological father—supports her otherwise untimely challenge of paternity. Arguing that the DNA test results were admissible pursuant to section 742.12(4), Florida Statutes, Rodriguez avers that summary judgment was appropriate and that paternity should be disestablished for Castillo and established for Coira. Rodriguez did not attempt to seek timely relief under Rule 1.540 in the trial court, nor did she claim it as an alternative basis for relief. To the contrary, Rodriguez specifically disclaimed Rule 1.540 as a basis for relief in her answer brief, noting that "the record is clear that this case did not involve any proceedings under Fla. R. Civ. P. 1.540." Rodriguez filed the joint petition (later disclaimed by Coira) more than a year after the order establishing paternity, thereby rendering moot any 1.540(b)(1)-(3) motion, even if one had been filed. See Fla. R. Civ. P. 1.540(b) (explaining that a motion under subsections (1)-(3) "shall be filed within a reasonable time . . . not more than 1 year after the judgment, decree, order, or proceeding was entered or taken").

7

must regard strangers as their fathers. The law does not require such cruelty toward children.

617 So. 2d 305, 309 (Fla. 1993) (emphasis omitted). Here, Coira, the alleged biological father, has evinced an intent not to seek to establish paternity, having voluntarily dismissed his petition. Castillo, the legal father of LC, has not sought to disestablish paternity. Rather, Castillo has consistently sought to be LC's father, a fact which was agreed to by Rodriguez and ratified by the trial court. Thus, a review of the record in this case confirms the Supreme Court of Florida's admonition that "it seldom will be in the children's best interests to wrench them away from their legal fathers and judicially declare that they now must regard strangers as their fathers. The law does not require such cruelty toward children." Id. This is especially true here, where the legal father has fought to remain so and the purported biological father has done the exact opposite. To come to another result would be, at the very least, unsupported by law.

## IV.    CONCLUSION

The trial court's order disestablishing paternity for Castillo and establishing paternity for Coira is hereby vacated.

Reversed and remanded for proceedings consistent with this opinion.[6]

---

[6] It appears from the record that the agreed parenting plan, entered into by the parties on July 13, 2016 and ratified by the trial court on July 20, 2016,

8

may be the most recent timesharing agreement. In remanding for further proceedings consistent with this opinion, we make no factual findings or interfere with the trial court's ability to reinstate or modify this latest parenting plan as appropriate. However, we note that absent a change in circumstances, such order should generally be left undisturbed. See Wade v. Hirschman, 903 So. 2d 928, 934 (Fla. 2005) (instructing that a party seeking to modify a time-sharing agreement must satisfy the "substantial change test").